**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WHITNEY LANE HOLDINGS, LLC,

                              Plaintiff,

           - v -                                    Civ. No. 1:08-CV-775
                                                         (GLS/RFT)

DON REALTY, LLC, *et al.*,

                              Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

**NO APPEARANCE ON BEHALF OF PLAINTIFF WHITNEY LANE HOLDINGS, LLC

OFFICE OF MATTHEW J. SGAMBETTERA          MATTHEW J. SGAMBETTERA, ESQ.
*Attorney for Defendants Don Realty, LLC,*
*Donovan Littlefield & Arrianna Littlefield, a/k/a*
*Adrianna Littlefield, by their guardian Matthew J.*
*Sgambettera, Esq., DDA & A Realty, LLC, &*
*DLL Family Partnership*
*(Hereinafter "Don Realty Defendants")*
323 Ushers Road
P.O. Box 1550
Clifton, Park, New York 12065

HISCOCK BARCLAY LAW FIRM              J. ERIC CHARLTON, ESQ.
*Attorney for Defendant OSJ of Clifton Park, LLC*
*(Hereinafter "OSJ")*
One Park Place
300 South State Street
Syracuse, New York 13202

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## <u>REPORT RECOMMENDATION and ORDER</u>[1]

This case originated in state court more than two years ago and has recently stumbled through this Court's threshold. While the underlying legal issues invoked in the Complaint are not, by themselves, complex, the manner in which this case was removed to federal court has unnecessarily catapulted this case into a sphere of incommodious complexity, causing this Court to question the propriety of the removal, our ability to review the removal, the Court's subject matter jurisdiction, and the proper venue of this case. Currently before this Court is the removing party's (OSJ) Motion to Change Venue. Dkt. No. 8. As explained more fully below, multiple issues must be resolved before the Court can address the merits of this Motion.

## I. BACKGROUND

### A. Real Estate Transaction

This case began in 2004, when a fairly simple real estate transaction went awry.[2] On or about August 30, 2004, Plaintiff Whitney Lane Holdings, LLC, entered into a Purchase and Sale Agreement with the Defendants Don Realty, LLC and Donovan and Arrianna Littlefield (a/k/a Adrianna Littlefield) by their guardian, Matthew J. Sgambettera, Esq., for the purchase of premises

---

[1] Because of our assessment, as explained fully below, that remand is the appropriate action in this matter, the Court is issuing this Opinion as a Report-Recommendation and Order. *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008) (noting that the list of dispositive orders included in 28 U.S.C. § 636(b)(1)(A) is non-exhaustive and joining other Circuits in holding that a "remand order is dispositive insofar as proceedings in the federal court are concerned and is thus the functional equivalent of an order of dismissal") (quoting *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998)).

[2] In this section, we render a factual background utilizing the Complaint and Affidavits submitted in support of the removal as well as the Motion to Change Venue pending before this Court. At the outset of the removal, the only pleading made available to the Court was the state Complaint, which was attached to the Notice of Removal. Dkt. No. 1, Ex. A, Compl. Recently, OSJ provided a copy of its Answer, which it asserts was filed with the Saratoga County Clerk's Office. Dkt. No. 15-2, Def. OSJ Answer. As will be further examined later in this Opinion, the Saratoga County Clerk's Docket does not include such filing in its public record. *See infra* Part II.A.1. Nevertheless, given the length of time this litigation has been pending, we can safely presume that certain representations in the Complaint are contested, though we need not presuppose the particulars of the disputes for purposes of plowing through the current Motion and for purposes of tackling head-on the various anomalies plaguing the removal.

located in Clifton Park, New York, for the price of $4,550,000.  Dkt. No. 1, Ex. A, Compl. at ¶ 6;[3]

Dkt. No. 12-2, Matthew J. Sgambettera, Esq., Decl., dated Jan. 19, 2009, at ¶¶ 3-4.  As with most

real estate transactions, certain representations and warranties were memorialized in writing.

Compl. at ¶¶ 8-10.  At the closing held on November 4, 2004, the purchaser, Whitney Lane,

delivered $1,000,000 to the sellers, Don Realty Defendants.  On the following day, November 5,

2004, the Plaintiff-purchaser executed a Note for the balance of the purchase price, $3,550,000, and,

in consideration of the payment of the purchase price, a warranty deed was delivered to the

purchaser.  *Id*. at ¶¶ 11-12.  That Note, secured by a Purchase Money Mortgage of the subject

premises, was held, at the request of the Littlefields, by Defendant DDA & A Realty, LLC.[4]  *Id*. at

¶ 13.  Pursuant to that Note, payments of interest only were to be made monthly until December 1,

2006, on which date the entire unpaid balance of the principal, together with any accrued interest,

would be due and payable.  *Id*. at ¶ 14.

On or about June 29, 2005, the Town of Clifton Park commenced an action in the New York

State Supreme Court, Saratoga County, to acquire by eminent domain a portion of the land adjoining

the subject premises in order to reconstruct and widen the roadway and construct a sidewalk.  *Id*.

at ¶¶ 17-20; Sgambettera Decl. at ¶ 5.  Permission to acquire such land was granted on August 30,

2005.  Sgambettera Decl. at ¶ 5.  Plaintiff claims that the sellers were aware, at the time of closing,

of this pending eminent domain proceeding and the devaluing effect it would have on the subject

property, yet they purposely concealed such information from Plaintiff in order to induce the sale

---

[3] The Complaint contains various references to Exhibits, purportedly attached thereto, however, such Exhibits were not included in Defendant OSJ's removal papers.

[4] Apparently, Derwood a/k/a Don Littlefield signed the note and mortgage, as manager, on behalf of DDA & A.  Dkt. No. 1, Ex. B, Decision and Order, filed Apr. 9, 2008, at p. 2 (Stephen A. Ferradino, J.).

of the property.  Compl. at ¶¶ 17-26.

## B.  Litigation Background

Complications to this transaction thereafter ensued, including a series of assignments of the Mortgage from the original sellers to several entities, a default, and allegations of fraud.

The first of such assignments occurred on September 5, 2006, when DDA & A Realty assigned the Mortgage to DLL Family Limited Partnership.  Dkt. No. 1, Ex. B, Decision and Order, filed Apr. 9, 2008 (Stephen A. Ferradino, J.).  On November 30, 2006, one day prior to the maturation of the Note, after unsuccessfully attempting to renegotiate the terms of the Note, Plaintiff commenced an action in New York State Supreme Court, Saratoga County, alleging that Defendants fraudulently concealed the Town of Clifton Park's plan to take a portion of the property in contravention of the express terms of the contract for sale of the property.  *See generally* Compl. By the state action, Plaintiff sought monetary damages resulting from the alleged fraudulently induced sale as well as the depreciation of the property resulting from the Town's eminent domain acquisition.  Plaintiff also sought injunctive relief to stymie any effort to collect or enforce the Note or to pursue foreclosure relative to the Purchase Money Mortgage.  *Id*. at WHEREFORE Clause. While no specific allegations of wrongdoing appear to be asserted against DDA & A Realty, its inclusion in the litigation appears to be limited to the injunctive relief being sought.[5] Following the filing of the Complaint, the Note matured and Plaintiff defaulted, ultimately resulting in DLL, the assignee of the Note and Mortgage, filing a foreclosure action against Plaintiff on December 13,

---

[5] Given the close relationship the individual Defendants appear to have with DDA & A Realty, *see supra* note 4, we cannot be completely sure that fraud allegations are not similarly being pursued against DDA & A Realty.  We are only privy to the Plaintiff's Complaint, which we read as asserting no specific factual allegations of fraud against DDA & A Realty.  However, as is apparent from Judge Ferradino's decision, a close relationship existed amongst the Don Realty Defendants thereby precluding the incision of any one claim from the entirety of the real estate transaction. Dkt. No. 1, Ex. B.

2007.[6]  Sgambettera Decl. at ¶ 8.

On June 22, 2007, DLL assigned the Note and Mortgage to Defendant OSJ, and, almost a year later, on April 9, 2008, the Honorable Stephen A. Ferradino, Supreme Court Justice, Saratoga County, granted Plaintiff's motion to add OSJ as a defendant to the fraud action by virtue of its assignee status.[7]  Dkt. No. 1, Ex. B at p. 3.  It is not clear whether joinder of OSJ was officially consummated by service of a Summons and a copy of the state Complaint, but, according to OSJ, an Answer was interposed, albeit three months after Judge Ferradino issued his April 9th decision. Dkt. No. 15-2, Def. OSJ Answer, dated July 18, 2008; *see also supra* note 2.  Then, matters were further complicated when just weeks after Judge Ferradino issued the April 9th decision, Plaintiff filed a Petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in the United States Bankruptcy Court for the Eastern District of New York on April 25, 2008.  Dkt. No. 1 at ¶ 2; *see also In re Whitney Lane Holdings LLC*, Pet. # 8-08-72076 (Bankr. E.D.N.Y.).  Proof of Service of a "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines" was filed with the Bankruptcy Court on May 1, 2008.  Listed amongst those served is OSJ.  *In re Whitney Lane Holdings LLC*, Pet. # 8-08-72076 (Bankr. E.D.N.Y.), Dkt. No. 6.  The Notice informs potential creditors of the fact that Whitney Lane filed a Petition and of those creditors' rights in the Bankruptcy forum.  On May 27, 2008, OSJ filed a "Notice of Appearance and Demand for Services of Papers."  *Id.*, Dkt. No. 14.  On or about August 1, 2008, OSJ filed a Proof of Claim in the

---

[6] The state fraudulent conveyance and foreclosure actions were joined for trial in state court  Dkt. No. 1, Ex. B at p. 3.

[7] Approximately one month after the June 2007 assignment to OSJ, the state court granted DLL's motion to have OSJ substituted in the foreclosure action.  *Id.*  According to Plaintiff's Chapter 11 Bankruptcy Disclosure Statement, the foreclosure action resulted in an issuance of a judgment of foreclosure and sale, but the court stayed enforcement of that judgment pending the result of the fraud claim and another related malpractice action.  Dkt. No. 8-8, Pl.'s Ch. 11 Disclosure Statement.

Bankruptcy Court.  Dkt. No. 8-3, J. Eric Charlton, Esq., Decl., dated Nov. 26, 2008, Ex. F.

Amid all these Bankruptcy filings, on July 18, 2008, approximately three months after Whitney Lane filed its Bankruptcy Petition, OSJ, asserting its status as a Defendant in the state fraud action, unilaterally removed the state fraud case to this Court pursuant to 28 U.S.C. § 1452.[8]  Dkt. No. 1.  The basis for the removal is that the state court matter is "related to" the Bankruptcy Petition filed by Plaintiff.  *Id.*  Included within that Notice of Removal is OSJ's stated intent to have the matter transferred to the Eastern District of New York, where it anticipates a referral to the Bankruptcy Court.  *Id.* at ¶ 8.[9]  But, for reasons unknown to this Court, that Motion, made pursuant to 28 U.S.C. § 1412, did not come to fruition until many moons later, on November 26, 2008.  As if things could not get any more complex, we note there has been no appearance in this Court on behalf of Plaintiff.  Only the Don Realty Defendants have appeared and they oppose OSJ's request to change venue.[10]

---

[8] Notably, OSJ's Answer to the Complaint is also dated July 18, 2008.  Dkt. No. 15-2.

[9] At first glance, it struck this Court as odd that a case would be removed to this Court on the basis of its relation to a Bankruptcy matter pending, not here, but in the Eastern District.  While there is little authority on the propriety of this procedure, we are satisfied that, to accomplish the feat of joining the state case with the Bankruptcy case, OSJ's only respite was to remove the state case to the "district court for the district where such civil action is pending" (28 U.S.C. § 1452(a)), then seek a change of venue to the Eastern District (28 U.S.C. § 1412), and ultimately seek referral to the Bankruptcy Court in the Eastern District (28 U.S.C. § 157(a)).  *See Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 281 B.R. 809, 812-13 (N.D.N.Y. 2002) (citing *In re S & K Air Power of Florida, Inc.*, 166 B.R. 193, 194 (Bankr. S.D. Fla. 1994), for the proposition that "a party seeking to consolidate a state action with a bankruptcy proceeding pending in another judicial district must first remove the state action to the district in which that state action was filed, and then move to transfer venue to the district in which the bankruptcy case is pending"); *see also In re Nat'l Developers, Inc.*, 803 F.2d 616, 620 (11th Cir. 1986) (same); *In re Trafficwatch*, 138 B.R. 841, 843 (Bankr. E.D. Tex. 1992) (same).

[10] Though their Opposition papers were filed late, the Court accepts the filing based upon good cause shown and without objection from Defendant OSJ.  Dkt. Nos. 13 & 14; Text Order, dated Jan. 27, 2009.

## II.  DISCUSSION

### A.  Jurisdiction

This Court is troubled by the numerous deficiencies we perceive in the removal procedure. We note that the Don Realty Defendants did not timely move for remand of this action, nor in their Opposition papers do they suggest that remand is a viable alternative the Court should consider.  By failing to timely raise certain procedural defects regarding the manner in which the case was removed, the Don Realty Defendants have waived the right to attack the Court's removal jurisdiction.  28 U.S.C. § 1447(c).  Nevertheless, while no timely motion for remand has been presented to the Court, it is our belief that the apparent procedural abnormalities in the removal, which are fully discussed below, have not been waived since they strike at the heart of this Court's subject matter jurisdiction.  We acknowledge that many of the issues addressed herein are raised *sua sponte* by the Court.  Because we are issuing this decision as a Report-Recommendation and Order, the parties will have ample time to be heard through further briefing/objection to the District Judge, therefore, we perceive that no prejudice inures to any party appearing in this action.

### 1.  OSJ's Status as a Party

We are compelled at the outset to address the Don Realty Defendants' abridged, or rather underdeveloped, "statement of undisputed fact" that, despite the state court's grant of permission for Plaintiff to add OSJ, as an assignee, to the fraud action, OSJ was never served with a Summons and a copy of the Complaint.  Dkt. No. 12, Don Realty Defs.' Mem. of Law in Opp'n to OSJ's Mot., at p. 3.  In its Notice of Removal, OSJ acknowledges that its name does not appear in the case caption, but it categorically states that it was "joined as a party defendant to the State Court Action by a Decision and Order issued by the Court"; that decision is also attached to the Notice.  Dkt. No.

1 at ¶ 1 & Ex. B.

Though no party fully develops this contention, it nevertheless strikes this Court as an important starting point for our discussion. Defendant OSJ bases its removal of this action on 28 U.S.C. § 1452(a), the "bankruptcy removal" provision, which provides:

> A **party** may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a) (emphasis added).

The Don Realty Defendants' charge that OSJ does not enjoy status as a "party" to the state action calls into question OSJ's authority to remove under § 1452.

Attached to OSJ's Notice of Removal are the Original Summons and Complaint for the state action, dated November 30, 2006, and a decision rendered a year-and-a-half later by Judge Ferradino on April 9, 2008. Dkt. No. 1, Ex. A. Although OSJ's name does not appear in the caption of the Summons and Complaint, further review of the state court judge's decision confirms that Whitney Lane Holdings, LLC, was granted permission to add OSJ as a party to the state action pursuant to New York's Civil Practice Law and Rules (CPLR) § 1018. But that Order, in and of itself, is only half the effort of what was required to join OSJ. The other half entailed amending the complaint to add this party, then service of a summons and copy of such pleading must be accomplished. Recently, OSJ supplied this Court with a copy of its Answer, which it claims was filed with the Saratoga County Clerk's Office and apparently served on the other parties. Dkt. No. 15-2. OSJ's Answer is dated July 18, 2008, the same date it removed the state case to this Court.[11] In this regard, the Court takes judicial notice of the fact that according to information available via New York

---

[11] Within the Answer supplied to this Court is OSJ's preservation of the affirmative defense that the court lacks jurisdiction over OSJ. Dkt. No. 15-2 at ¶ 43.

*-8-*

State's Unified Court System, it does not appear that OSJ was ever officially joined as a party to the state action, nor has there been any appearance in that court on its behalf. *See* New York State Unified Court System Web Civil Supreme, *Whitney Lane Holdings, LLC v. Don Realty, LLC*, Index No. 002874/2006, *available at* http://iapps.courts.state.ny.us/webcivil/FCASSearch (last visited Sept. 30, 2009). Indeed, in reviewing the available information, there remains grave uncertainty as to whether OSJ was properly and officially included as a party in the state action. The dilemma then for this Court is whether this irregularity constitutes an affront to removal jurisdiction, which can be waived, or to subject matter jurisdiction, which cannot.

This patently anomalous quagmire is not easily solved, so we begin with the basics. The Second Circuit holds that courts may, and should, raise issues of removal jurisdiction and subject matter jurisdiction *sua sponte. Fax Telecommunicaciones Inc. v. A T & T*, 138 F.3d 479, 485-86 (2d Cir. 1998) (noting the Circuit has an obligation to *sua sponte* determine whether the district court properly heard the action regardless of the fact that the plaintiff "neither objected to removal nor challenged the jurisdiction of the district court"); *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991) (noting a court is obligated to determine whether removal jurisdiction is proper, regardless of whether the parties raise the issue); *Poindexter v. Nash*, 333 F.3d 372, 383 (2d Cir. 2003) (noting a court is obligated to *sua sponte* examine its own subject matter jurisdiction); *see also Laselva v. Schmidt*, 2009 WL 1312559, at *2 (N.D.N.Y. May 7, 2009) (Sharpe, J.) (citing *Migogna* for the proposition that "a court has a duty to determine whether removal is jurisdictionally proper, regardless of whether the parties raise the issue"). We start this process by analyzing the way in which this case appeared at this Court's doorstep, namely, removal.

Several statutes delineate a variety of circumstances wherein removal of state cases to federal

court can be accomplished.  *See* 28 U.S.C. §§ 1441-1453.[12]  "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns."  *Farace v. Pereira*, 2004 WL 1638090, at *2 (S.D.N.Y. July 22, 2004) (citations omitted); *see also Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991), *superceded on other grounds by rule as recognized in Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008).  Ergo, any doubts as to the existence of federal jurisdiction are to be resolved in favor of state court jurisdiction.  *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994).

As noted above, Defendant OSJ removed the state fraud case to this Court pursuant to 28 U.S.C. § 1452, which applies to removal of claims "related to" bankruptcy cases.  Unlike the general removal statute, set forth in 28 U.S.C. § 1441, the bankruptcy removal statute does not require unanimity/consent on behalf of all defendants; indeed, any one party may remove "any claim or cause of action."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 134 (2d Cir. 2007); *In re WorldCom, Inc. Sec. Litig*, 293 B.R. 308, 330 (S.D.N.Y. 2003).[13]  Pursuant

---

[12] Section 1441 serves as the general removal statute, while other sections provide for the removal of actions involving federal officers (§ 1442), members of the armed forces (§ 1442(a)), civil rights cases (§ 1443), foreclosure actions against the United States (§ 1444), class actions (§ 1453), and cases involving a bankruptcy (§ 1452).

[13] We are confident in our assessment that removal of a case by a non-party or unserved defendant is surely not the norm.  In fact, there is a dearth of cases available with fact patterns similar to our own whereby a possible non-party effectuated removal.  On the other hand, there is ample case law assessing the propriety of removals wherein an unserved defendant did or did not join/consent in the removal petition, but many of these cases concern the general removal statute, 28 U.S.C. § 1441, which courts read as requiring unanimous consent.  Those variances from the unanimity removal requirement, set forth in 28 U.S.C. § 1446, have been reconciled in favor of federal jurisdiction either because the other served defendants consented to the removal or because the unserved defendants did not need to sign the petition.  For example, in *Beekman Paper Co., Inc. v. Crane & Co., Inc.*, 1991 WL 19820, at *1 (S.D.N.Y. Feb. 13, 1991), the plaintiff sought a remand based on the fact that not all of the individual defendants, whom it claims it properly served, had signed the removal petition.  The court acknowledged that a dispute remained as to whether the individual defendants were properly served.  For those individuals who had not been served, the court found that their failure to join the petition did not defeat removal.  On the other hand, as to those individuals who might be found to have been served, the defect of their failure to join the removal petition was deemed curable since they each submitted affidavits noting they consented to the removal.  In *Browne Bros. Cypen Corp. v. Carner Bank of Miami Beach, Fla.*, 287 F. Supp.

(continued...)

to 28 U.S.C. § 1447, attacks on the propriety of a removal, other than for lack of subject matter jurisdiction, must be raised, by motion, within thirty days of the removal.  28 U.S.C. § 1447(c);[14] *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998).  If a party fails to move for remand based upon procedural defects in the removal, such irregularities are, in most instances, waived.  28 U.S.C. § 1447(c)).  This is so because, generally, removal is merely the procedural mechanism whereby cases may be transferred from state to federal court; it does not, by itself, provide the source of a court's subject matter jurisdiction.  *Orange County Water Dist. v. Unocal Corp.*, __ F.3d __, 2009 WL 3160549, at *4 (2d Cir. Oct. 1, 2009) (noting that, like section 1441, section 1452 is merely the procedural mechanism for removal and does not confer subject matter jurisdiction; instead, original subject matter jurisdiction under 28 U.S.C. § 1334 is a precondition to removal under section 1452).  Thus, waiver of certain procedural defects is possible because the lack of removal jurisdiction, *i.e.*, because of the timing or form of the removal petition, does not in and of itself deprive a court of subject matter jurisdiction.  *Id*.  When, however, the court's subject matter jurisdiction is questioned, defects in the removal procedure are not always deemed to be curable or waivable irregularities.  *Property Clerk v. Smith*, 2000 WL 1725017, at *2 (S.D.N.Y.

---

[13](...continued)
700, 701 (S.D.N.Y. 1968), the plaintiff challenged the removal petition because it was not signed by a party and all of the named defendants failed to join in the application.  The court ruled that the petition was clearly signed by a representative of the only served defendant and that the other defendants, who had not been served, need not join in such petition.  *Browne Bros.*, 287 F. Supp. at 702.  The court further opined that the defects did not call into question the court's jurisdiction, but, rather, were irregularities that were curable.  Because of the explicit requirement in § 1452 that a "party" remove the action, we are hard pressed to draw any analogy from the above line of cases.  We merely mention this distinction by way of highlighting the aberrant scenario presented herein.

[14] Section 1447(c) states in relevant part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Nov. 17, 2000) ("[A]n irregularity in removal of a case to federal court is to be considered jurisdictional only if the case could not initially have been filed in federal court." (internal quotation marks and citation omitted) (alteration in original)); *see also Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC*, 357 F. Supp. 2d 529, 533 (E.D.N.Y. 2004) (citing *Property Clerk*).

In our case, there is a serious reservation as to whether OSJ was ever joined as a party to the state fraud litigation. For the purpose of removal, it is federal law that determines who is a plaintiff and who is a defendant. *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954); *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 862 (2d Cir. 1988) (citing *Chicago, R.I. & P.R. Co.*). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant. . . . Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (citations omitted).

Whitney Lane was granted permission, pursuant to CPLR § 1018, to add OSJ as a defendant on April 9, 2008. Yet, it does not appear to this Court that Whitney Lane consummated the feat of acquiring personal jurisdiction by serving OSJ with a Summons and amended pleading. We know that at least three months elapsed between the date in which Whitney Lane was granted permission to add OSJ and the date in which OSJ purportedly filed its Answer and concomitantly removed the state action to this Court. And, we know that in the interim, Whitney Lane filed its Chapter 11 Bankruptcy Petition. After reviewing the state docket, we conclude that no amended pleading was filed by Whitney Lane and OSJ never appeared in that court. We know these conclusions to be true

because the state docket lists the appearances of three law firms: two on behalf of Plaintiff and one on behalf of the Don Realty Defendants. OSJ is not listed as an active nor inactive participant. Because Plaintiff has not appeared herein, we have no first hand account as to what efforts, if any, were undertaken to secure OSJ's appearance in state court, nor whether it intended to abandon its desire to include OSJ as a party to the state action.[15]  Indeed, under New York law, Whitney Lane is not obligated to continue its state action against an assignee. *Weiss v. Kanarek*, 241 N.Y.S. 345, 346 (N.Y. Sup. 1930); *see also* N.Y. C.P.L.R. § 1018.

OSJ seems to suggest that its presence in the state suit was mandated by Judge Ferradino's April 9, 2008 Order. *See* Dkt. No. 1 at ¶ 1 ("Although its name does not appear in the caption, OSJ was joined as a party defendant to the State Court Action by a Decision and Order issued by the Court[.]").[16]  Yet, we do not have the same reading of that order. In our estimation, all the court did was rule on Whitney Lane's motion to add a party; the court did not obviate the need for Whitney Lane to amend its state complaint and serve a copy of that pleading along with a Summons on OSJ. Had the court directed, at the very least, service of its order on OSJ, we might be willing to view the order from OSJ's perspective. But no such direction is included therein. There is nothing on the record before this Court or before the state court indicating OSJ had any obligation to appear before either court and defend against Plaintiff's fraud claim, despite its status as assignee of the Note and Mortgage and despite its successful substitution in the companion foreclosure case. Obviously we are in no position to evaluate OSJ's preemptive strategy of "filing and serving" its Answer before

---

[15] By the time Whitney Lane acquired permission to add OSJ to the state fraud action, OSJ had already been substituted in the companion state foreclosure action that is still pending in the state court against Whitney Lane. *See* Dkt. No. 1, Ex. B at p. 3. As noted above, the foreclosure and fraud actions had been joined in the state court for purposes of trial, thereby culminating into another complexity forestalling our quest to determine whether OSJ is a party.

[16] OSJ mistakenly represents 2007 as the year in which that order was issued.

being called upon to do so by any authority. Nor do we understand why OSJ claims it filed an Answer in the state court, yet its appearance in that court is absent from the public docket. But, most confounding, however, is the fact that OSJ would willingly submit to the state court's jurisdiction by appearing without ever being summoned, and possibly to this Court's personal jurisdiction as well by failing to pursue its defense, and at the same time, preserve its right to attack both courts' rightful assertions of personal jurisdiction over it. Indeed, the two asseverations cannot coexist harmoniously. While the removal itself may not have initially waived a jurisdictional defense in this Court, OSJ's failure to diligently pursue this defense upon removing the case could be found to result in a waiver. *See Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) (observing that the act of removal does not itself waive any defense available under Federal Rule of Civil Procedure 12(b) and noting, in any event, that the defendant raised his defense in a "timely manner" when, immediately following the removal, he filed a motion to dismiss and commenced discovery on that motion); *Heavy Const. Lumber, Inc. v. Local 1205, Int'l Bhd. of Teamsters*, 2001 WL 477229, at *4 (E.D.N.Y. Feb. 12, 2001) (citing, *inter alia*, *Cain v. Commercial Publ'g Co.*, 232 U.S. 124 (1914), for the proposition that removal does not on its own cause a defendant to waive an objection to personal jurisdiction). And, should a remand to state court be effectuated, it seems clear under New York State law that by removing the case, OSJ will have waived any such jurisdictional attack in the state court. *See Farmer v. Nat'l Life Ass'n of Hartford*, 33 N.E. 1075 (N.Y. 1893)[17] (noting that by removing the action to federal court, the defendant effected a general appearance and,

---

[17] In *Farmer*, the court sagely observed that by removing the case to federal court, the particular defendant avowed that a state action was pending against it, to which it was a party. This averment precluded further denunciation of personal jurisdiction upon remand to the state court. As indicated herein, the federal courts seem to take a slightly different stance on this issue allowing removing defendants to preserve the affirmative defense and pursue it in federal court after removal is accomplished.

upon remand to state court, "necessarily submitted itself to the jurisdiction of the state court," thereby waiving "any defect there may have been in the procedure to acquire jurisdiction of its person") (cited in *Quinn v. Booth Mem. Hosp.*, 657 N.Y.S.2d 680 (N.Y. App. Div. 1ˢᵗ Dep't 1997)); *see also Grant v. Kellog Co.*, 3 F.R.D. 229, 231 (S.D.N.Y. 1943) (quoting *Henderson v. Henderson*, 160 N.E. 775, 777 (N.Y. 1928) for the proposition that the general rule in New York is that a defendant's participation in the action constitutes a waiver of jurisdictional attacks and further noting that the rule was approved by the Supreme Court in *Merchants Heat & Light Co. v. James B. Clow & Sons*, 204 U.S. 286, 290 (1907)).

Given the glaring omission of OSJ to the state docket, official joinder of OSJ remains nebulous. A non-party, even one claiming to be a "real party in interest[,] has no authority to notice removal" under a statute speaking only to removal by a "party." *See Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 298-99 (S.D.N.Y. 1999) (citing cases); *Newman and Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 117 (E.D.N.Y. 2005) (citing cases for the proposition that a "non-party" has no authority to seek removal under the removal statutes);[18] *see also Housing Auth. of Atlanta v. Millwood*, 472 F.2d 268, 272 (5ᵗʰ Cir. 1973) (cited in *Newmann and Cahn, LLP*, for the proposition that "where an entity has not been properly served in state court, it is not a party and removal jurisdiction cannot be premised on its presence in the action"). Based on the evidence before this Court, including that which we take judicial notice, we find that OSJ was not a party at the time it removed the state claim to this Court and, thus, the case was improperly removed by it. In this regard, "[t]he weight of authority instructs that a district court is without subject matter

---

[18] While *Am. Home Assurance Co.* and *Newmann and Cahn, LLP*, dealt with the general removal statute, in light of the fact that removal statutes are to be strictly construed, we see no basis to distinguish the concept that "bankruptcy removal" can only be accomplished by a "party."

jurisdiction in a case where that court's removal jurisdiction is invoked by a non-party." *Juliano v. Citigroup*, 626 F. Supp. 2d 317, 319 (E.D.N.Y. 2009) (citing cases).

While the Don Realty Defendants may have succumbed to this Court's removal jurisdiction over the case by virtue of their failure to move for remand, without the creditor, OSJ, the federal jurisdictional nexus may be far too attenuated. It is primarily because of its role as a creditor in the Bankruptcy proceeding that OSJ sought to invoke the federal courts bankruptcy jurisdiction. Arguably then, were OSJ removed from the equation, there seems little reason to keep the case here, especially in light of the fact that the other Defendants are not creditors in the Chapter 11 proceeding. But the question remains whether the case would otherwise fall within federal jurisdiction under 28 U.S.C. § 1334, for if it does, then this irregularity goes only to waivable removal jurisdiction. *See Property Clerk v. Smith*, 2000 WL 1725017, at *2 (citing cases for the proposition that irregularities in removal is waived so long as the case could have been initially filed in federal court). If not, then this defect in the removal jurisdiction is not waivable as it goes to the heart of this Court's subject matter jurisdiction.

Alternatively, were we to find that, by virtue of its initiation of removal and failure to diligently act on any perceived defect in service OSJ effectively waived its due process rights to the formalities of proper service, we still must examine whether proper subject matter jurisdiction exists. In this regard, we note that OSJ cannot submit to this Court's subject matter jurisdiction by virtue of its removal to this Court or by its interest or participation in the bankruptcy matter. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. . . .[;] the consent of the parties is irrelevant[.]" (internal quotation marks and citations omitted)). When subject matter

**-16-**

jurisdiction is lacking, dismissal is mandatory.  *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  In order, then, to answer this riddle of proper removal, we must look to see if the Court otherwise has original jurisdiction over the claims, an issue we take up later in this opinion.  *See infra* Part II.A.4.

### 2.  Forum Selection Clause

Before addressing the matter of whether the Court has original jurisdiction, we briefly address another rudimentary postulation raised by the Don Realty Defendants, that being the fact that a forum selection clause was executed by the parties.  If true, such clause could prove to be another impediment to proper removal.  Because this issue was not raised in a motion for remand, we would again need to determine what effect, if any, it may have on this Court's subject matter jurisdiction.  According to the Don Realty Defendants' submissions, the Promissory Note, executed by Plaintiff as part of the real estate transaction, contains the following clause:

> **"[THE PLAINTIFF] HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE SARATOGA COUNTY SUPREME COURT . . .** [Plaintiff] acknowledges and agrees that the venue provided above is the most convenient forum for both the Lender and [Plaintiff].  [Plaintiff] waives any objection to venue and any objection based on a more convenient form [sic?] in any action instituted under this Note."

Dkt. No. 12 at p. 5 (alterations provided by Don Realty Defendants).

Though quoted from extensively, the Note itself was not provided to the Court.[19]  Yet again, we must

---

[19] According to Attorney Sgambettera's Declaration in Opposition to OSJ's Motion to Change Venue, two Exhibits are represented as being attached thereto, yet no exhibits accompany that filing.  Upon information and belief, the two referenced Exhibits constitute OSJ's Answer and the Note.  Dkt. No. 12-2, Sgambettera Decl. at ¶¶ 11 (referencing OSJ's Answer as "Exhibit 'A'") & 15(b) (referencing the Promissory Note as "Exhibit 'B'").  On June 23, 2009, this Court directed Attorney Sgambettera to submit Exhibit A for the Court's review.  That call went unanswered until October 15, 2009, when OSJ took it upon itself to satisfy the Court's behest in an effort to ensure the record is complete.  Dkt. No. 15.

determine whether the existence of this forum selection clause goes to removal jurisdiction, which, by virtue of the Don Realty Defendants' failure to timely seek remand, has been waived, or if it goes to the Court's subject matter jurisdiction.

We start with the premise that the enforceability of a forum selection clause is governed by federal law since such clauses are "procedural, rather than substantive, in nature." *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990). Forum selection clauses are presumptively valid, and substantial deference is given to the parties' selected forum, unless a clear showing is made that the clause is unreasonable or the product of fraud. *New Moon Shipping Co., Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

It appears to this Court that the forum selection clause, of which OSJ is bound by virtue of its role as assignee, provides exclusive jurisdiction to a specific court, New York Supreme Court, Saratoga County, over all "actions instituted under" the Note. *See, e.g.*, *Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989) ("It has always been the law in New York that an assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment."). It may well be that the exclusive nature of the clause and the specificity of the court to which the parties contractually subjected themselves further impedes OSJ's ability to remove this action. *See Wells Fargo Century, Inc. v. Brown*, 475 F. Supp. 2d 368, 371-72 (S.D.N.Y. 2007). However, we were only presented with an altered quotation from the Note and without the ability to review the actual document, we are simply unable to provide a recommendation as to whether the clause by itself divests this Court of subject matter jurisdiction. While we find other bases for remand are present, we would recommend, on this issue alone, that a hearing be held so the parties can be properly heard as to the effect the forum selection clause has

on this Court's subject matter jurisdiction.

### 3.  Well-Pleaded Complaint Rule

Putting aside for the moment the perplexity surrounding the forum selection clause, as well as our doubts concerning whether OSJ was added to the state action by virtue of the state court order, other obstacles nevertheless pervade which must be addressed before the Court can assert subject matter jurisdiction over the action and consider OSJ's motion to change venue.

The jurisdictional basis for bankruptcy removal pursuant to § 1452(a) is provided in 28 U.S.C. § 1334.  Pursuant to section 1334, the district court has "original and exclusive jurisdiction of all cases under [T]itle 11."  28 U.S.C. § 1334(a).  Furthermore, the district court has "original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11."  *Id.* at § 1334(b).  Actions that "arise under" Title 11 involve claims that are "predicated on a right created by a provision of [T]itle 11."  *In re Chargit Inc.*, 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987).  "'Arising in' proceedings are those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Id.* (citation omitted).  And, an action is "related to" a case under Title 11 if the litigation has a "significant connection to" or its outcome might have "any conceivable effect on" the bankruptcy proceeding.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992).

In its Notice of Removal, OSJ contends that this Court has subject matter jurisdiction over the state fraud claim because it "relates to" a pending bankruptcy matter.  Dkt. No. 1 at ¶ 6.  Thus, the Court focuses its subject matter jurisdiction inquiry on whether "related to" jurisdiction exists.[20]

Generally, in determining whether subject matter jurisdiction exists in a removed case, courts

---

[20] Later in this Opinion we discuss OSJ's contradictory statement that the Court has bankruptcy jurisdiction over the state fraud action because it constitutes a proceeding "core" to the bankruptcy function.  *See infra* Part II.B.

are bound by the well-pleaded complaint rule, "which provides that federal jurisdiction exists only if a federal question is affirmatively and distinctly presented on the face of the plaintiff's properly pleaded complaint." 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.14[3][a][iii] (3d ed. 2009). Clearly, this rule applies to the general removal statute, 28 U.S.C. § 1441, which allows for removal of cases that could have originally been brought in federal court under either diversity or federal question jurisdiction. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998); 28 U.S.C. § 1441(a) & (b). The question for this Court, and many courts before us, is whether the well-pleaded complaint rule similarly applies to bankruptcy removals under § 1452. Were the rule to apply, there is little doubt that this Federal Court would lack subject matter jurisdiction over the claims asserted in the Plaintiff's Complaint, which patently raise only state law claims and involve parties who are, for all intents and purposes, considered to be citizens of New York State. Nowhere in that pleading is there mention of a bankruptcy proceeding, and rightly so since the subject bankruptcy proceeding did not arise until years after the state fraud action was first initiated.

But there appears to be a split amongst the courts in this arena. On the one hand, many courts, including courts within the Second Circuit, hold that the well pleaded complaint rule applies to bankruptcy jurisdiction under § 1334. *See, e.g., Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC*, 357 F. Supp. 2d 529, 535 (E.D.N.Y. 2004) (citing cases for the proposition that "[i]t is well-established that the well-pleaded complaint rule applies to both federal question jurisdiction under 28 U.S.C. § 1331, and to bankruptcy jurisdiction under 28 U.S.C. § 1334"); *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 313 B.R. 9, 16 (D. Conn. 2004) (stating that the well-pleaded complaint rule applies to bankruptcy jurisdiction); *Yangming Marine Transp. Corp.*

*v. Electri-Flex Co.*, 682 F. Supp. 368, 370 (N.D. Ill. 1987) (referred to by other cases as "the seminal case" regarding the application of the rule to "related to" jurisdiction by finding that "[t]here is no bankruptcy exception to the well-pleaded complaint rule" and that no bankruptcy jurisdiction existed where "[t]he relatedness, if any, of th[e] case to a bankruptcy is visible only from the answer"). Other courts, however, have taken the view that the well-pleaded complaint rule applies only when assessing § 1334's "arising in" or "arising under" bankruptcy jurisdiction, and has little context or practicality when applied to "related to" jurisdiction. *See, e.g., In re Donoho*, 402 B.R. 687, 697 (Bankr. E.D. Va. 2009) (analyzing split amongst courts and deciding that the well-pleaded complaint rule does not apply when a bankruptcy removal is predicated on "related to" jurisdiction); *In re Brooks Mays Music Co.*, 363 B.R. 801, 815 (Bankr. N.D. Tex. 2007) (explaining the impracticality of assessing "related to" bankruptcy jurisdiction from the face of a complaint); *Foster Poultry Farms, Inc. v. Int'l Bus. Mach. Corp.*, 2006 WL 2769944, at *8 (E.D. Cal. Aug. 1, 2006).

To understand the latter view, which seems to be gaining greater consensus and momentum, we start with the general federal question jurisdiction statute, 28 U.S.C. § 1331, which confers original jurisdiction on the district courts for all civil actions "**arising under** the Constitution, laws, or treaties of the United States." (emphasis added). As noted above, for purposes of removal, the "arising under" language requires federal jurisdiction be presented on the face of the plaintiff's complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The bankruptcy jurisdiction statute has mirroring language, allowing for district court jurisdiction over cases "arising under" Title 11. 28 U.S.C. § 1334(b). Logically, then, the well-pleaded complaint rule would apply to that portion of § 1334. However, § 1334 provides an alternate means of obtaining federal jurisdiction for cases "related to" bankruptcy proceedings. *Id.* Courts espousing the more constricted view of

the well-pleaded complaint rule contend that this court-made doctrine originated in the context of "arising under" jurisdictional invocations, and therefore only applies with regard to federal question "arising under" jurisdiction. *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 258 (1992) (noting that the "'well-pleaded complaint' rule applies only to statutory 'arising under' cases" and had no applicability to jurisdiction conferred elsewhere); *In re Brooks Mays Music Co.*, 363 B.R. at 814-16 (following *Am. Nat'l Red Cross* in holding that the well-pleading complaint rule has no applicability in § 1334 "related to" jurisdictional analyses); *In re Donoho*, 402 B.R. at 694-97 (analyzing the split amongst the courts and siding with those courts that emphasize the limited applicability of the well-pleaded complaint rule to "arising under" jurisdictional questions).   By extension, these cases generally proclaim that based upon the disjunctive wording of the bankruptcy jurisdictional statute, the well-pleaded complaint rule is only the starting point of a jurisdictional analysis.   Thus, courts should first ask whether the complaint raises a claim "arising under" the Bankruptcy Code; if not, then the court should assess whether it "arises in" or is "related to" a bankruptcy proceeding.  *In re Brooks Mays Music Co.*, 363 B.R. at 815 (noting that this process is "the only sensible way to give effect to all of the language in section 1334").   This view further comports with the test generally applied in determining whether "related to" jurisdiction is present.   That test in the Second Circuit requires a court to decide whether the civil case has "any significant connection with" or "any conceivable effect on" the bankruptcy case.  *Turner v. Ermiger*, 724 F.2d 338, 341 (2d Cir. 1983); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992).[21]   In this regard, the test for "related

---

[21] In 1984, the Third Circuit issued *Pacor Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), which is revered as the leading analysis for assessing "related to" jurisdiction.  The test enunciated by the Third Circuit is as follows:
    The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. . . . Thus, the proceeding need not necessarily be against the debtor or

(continued...)

to" jurisdiction focuses on the outcome of the civil matter, not on the matters raised on the face of

the complaint. *In re Brooks Mays Music Co.*, 363 B.R. at 815; *In re Donoho*, 402 B.R. at 697

(agreeing with *In re Brooks* and further noting that, naturally, "a plaintiff would have little or no

occasion, in pleading a claim or cause of action that did not invoke federal bankruptcy law or that

had significance only because of a bankruptcy case, to include allegations" regarding the relatedness

to a bankruptcy matter).

---

[21](...continued)
against the debtor's property.  An action is related to bankruptcy if the outcome could alter the
debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in
any way impacts upon the handling and administration of the bankrupt estate.
*Pacor, Inc. v. Higgins*, 743 F.2d at 994, *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S.
124 (1995) (emphasis in original).

Prior to the Third Circuit's decision in *Pacor*, the Second Circuit issued *Turner v. Ermiger*, 724 F.2d 338 (2d
Cir. 1983), which applied a more narrow "related to" construction, asking whether the civil case had any "significant
connection" with the bankruptcy proceeding.  724 F.2d at 341.  While, ironically, *Pacor* cited to Eastern and Northern
District of New York cases in articulating the above test, courts within the Second Circuit perceived the tests set forth
in *Turner* and *Pacor* as distinct and held steadfast to the more narrow test articulated in *Turner*; during this span of time,
the Fourth, Fifth, Eighth, and Ninth Circuits had adopted the *Pacor* analysis.  *See Weisman v. Southeast Hotel Prop Ltd.
P'ship*, 1992 WL 131080 (S.D.N.Y. June 1, 1992) (noting that the Second Circuit may have adopted a more narrower
test, but the facts before the court satisfy both tests); *Widewaters Roseland Ctr. Co. v. TJX Co., Inc.*, 135 B.R. 204, 206
(N.D.N.Y. 1991) (noting that the court is bound by the Second Circuit's "narrower interpretation"); *see also cases
following Pacor's "related to" test: In re Am. Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir. 1989); *In re Wood*, 825 F.2d
90, 93 (5th Cir. 1987); *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987); *A.H. Robins Co. v. Piccinin*, 788
F.2d 994, 1002 n.11 (4th Cir. 1986).

Finally, as early as 1992, the Second Circuit clarified that its "related to" test is not dissimilar from that
employed by the other Circuits, and the District Courts within have followed suit.  *In re Cuyahoga Equip. Corp.*, 980
F.2d 110, 114 (2d Cir. 1992); *see also Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 281 B.R.
809, 813 (N.D.N.Y. 2002) (cited in *Deep v. Boies*, 2007 WL 169940, at *2 (N.D.N.Y. Jan. 17, 2007)).  In 1995, the
Supreme Court approved the *Pacor* analysis for determining "related to" jurisdiction.  *Celotex Corp. v. Edwards*, 514
U.S. 300, 308 n.6 (1995) (noting that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have
adopted the *Pacor* test "with little or no variation," while the Second and Seventh Circuits "seem to have adopted a
slightly different test").  The Supreme Court categorized the Second Circuit's test as "slightly different" from *Pacor*,
however, in that opinion, the Court cited to *Turner* and seemingly failed to recognize later Second Circuit cases that fall
closer in line with the *Pacor* test.  We believe that there is no real difference between the Second Circuit's test and that
of the other Circuits and note that courts within this Circuit often apply both tests.  *See City of Ann Arbor Employees'
Ret. Sys. v. Citigroup Mortgage Loan Trus Inc.*, 572 F. Supp. 2d 314, 317 (E.D.N.Y. 2008) (utilizing both tests in
determining "related to" jurisdiction); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 522 F. Supp. 2d
557, 560 n.13 (S.D.N.Y. 2007) (same); *Rahl v. Bande*, 316 B.R. 127, 132-33 (S.D.N.Y. 2004) (applying both tests); *In
re Victory Markets Inc.*, 263 B.R. 9, 15-16 (Bankr. N.D.N.Y. 2000) (noting the Supreme Court recognized the reliability
and judicial soundness of both tests).

It seems the Second Circuit has yet to definitively rule as to the application of the well-pleaded complaint rule in "related to" bankruptcy jurisdiction removals.  Nevertheless, we are swayed by the seemingly growing trend of courts to exclude "related to" bankruptcy jurisdiction from the well-pleaded complaint rule.  In this regard, we agree with the assessment that "[a] rigorous application of the well-pleaded complaint rule would effectively prevent a bankruptcy court from exercising, in the context of a removal, jurisdiction over a wide range of controversies that would otherwise fall within its original jurisdiction, and would also subvert the general policy favoring the centralization of litigation concerning the debtor in the bankruptcy court."  *In re Donoho*, 402 B.R. at 697.  Having determined that the starting point for our jurisdictional analysis is not confined to the four corners of the Complaint, we next assess the basis for invoking the Court's "related to" jurisdiction.

### 4. "Related to" Jurisdiction

In its Notice of Removal, OSJ contends that this Court has subject matter jurisdiction over the state fraud claim because it "relates to" a pending bankruptcy matter.  Dkt. No. 1 at ¶ 6.  In that same Notice, OSJ also contends that the state action is a "core proceeding" under 28 U.S.C. § 157(b)(2).  *Id*. at ¶¶ 7 & 18.  We find that for purposes of § 1334(b), if subject matter jurisdiction exists, it can only be for "related to" jurisdiction.  This case does not "arise under" or "arise in" a Title 11 case since it predates the filing of the Chapter 11 Bankruptcy Petition.  Furthermore, the fraud case exists independently of the bankruptcy proceeding and involves only state law causes of action.  *In re Riverside Nursing Home*, 144 B.R. 951, 955 (S.D.N.Y. 1992); *see also Covanta Onondaga Ltd v. Onondaga County Resource Recovery Agency*, 281 B.R. 809, 813 (N.D.N.Y. 2002)

(quoting *In re Riverside Nursing Home*).[22]

Based upon our review of the relevant case law, we find that, indeed, this action is "related to" a case under Title 11 for purposes of § 1334(b) since the outcome of this action could have a significant connection or conceivable effect on the potential assets of Whitney's bankruptcy estate. Such is evidenced by Whitney's Chapter 11 Plan of Reorganization, Disclosure Statement with Respect to the Reorganization Plan, as well as the fact that OSJ filed a Proof of Claim in the Bankruptcy case.   Charlton Decl., Ex. D, Whitney's Ch. 11 Plan of Reorganization;[23] Ex. E, Whitney's Disclosure Statement;[24] Ex. F, OSJ Proof of Claim.   Thus, while the Bankruptcy case is not technically pending in this District, the Court nevertheless appears to have proper subject matter jurisdiction, as attenuated as it may seem.

### B.  Abstention and Remand

The same statutes that afford this Court with removal jurisdiction, 28 U.S.C. § 1452, and bankruptcy jurisdiction, 28 U.S.C. § 1334, also allow for this Court to abstain from exercising its authority over the action for a variety of reasons.   Even with the finding of "related to" jurisdiction, we would nevertheless recommend abstaining from hearing this matter and remanding this case to the state court pursuant to sections 1334(c)(1) and 1452(b).   On this front, we note that the parties have not briefed the abstention issue.   By submitting this decision as a Report and Recommendation, we hereby provide notice to the parties that they must brief this issue to the District Court, along

---

[22] OSJ's seemingly contradictory characterization of this case under the umbrella of both "related to" and core jurisdiction is examined in more detail later in this opinion.  *See infra* Part II.B.

[23] Whitney Lane's Plan of Reorganization lists OSJ's secured claim as one that would be "impaired" by the Chapter 11 filing.  Charlton Decl., Ex. D, Whitney's Ch. 11 Plan of Reorganization, at pp. 5-6.

[24] Within the Disclosure Statement, Whitney details the events leading up to the Bankruptcy filing, the most prominent being the allegedly fraudulent conveyance at issue in this litigation, and further lists OSJ's claim as "impaired" by its Reorganization Plan.  Charlton Decl., Ex. E, Whitney's Ch. 11 Plan of Reorganization, at pp. 3 & 6.

with any other objection they may have to other portions of this decision, within ten days of the

issuance of this decision.[25]  28 U.S.C. § 636(b)(1).  Failure to object to this Report within ten (10)

days will preclude appellate review.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

*v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 72, 6(a), & 6(e).  Below is a discussion of the options this Court believes should be

pursued regarding abstention.

In conferring bankruptcy jurisdiction, "Congress distinguished between 'core' bankruptcy

matters, which do not exist independently of the Bankruptcy Code, and 'non-core' matters, which

do have independent existence under state law."  *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd.*

*P'ship*, 2004 WL 1048239, at *2 (S.D.N.Y. May 7, 2004).  Core cases, as set forth in 28 U.S.C. §

157, are those that "invoke[] substantive right[s] provided by [T]itle 11 or . . . proceeding[s] that,

by its nature, could arise only in the context of bankruptcy cases."  *Id.* (citations omitted).  "By

contrast, a proceeding is non-core if it exists independently under state law and is merely 'related

to' the bankruptcy case because of a conceivable effect upon the debtor's estate."  *Id.* (citations

omitted); *see also In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990) ("Non-

core proceedings . . . are those which are 'otherwise related to a case under title 11.'" (quoting 28

U.S.C. § 157(b)(3)).  Logically then, the jurisdiction conferred in section 1334 for "arising under"

and "arising in" cases are collectively called "core" bankruptcy proceedings, while "related to" cases

are non-core.  *Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 281 B.R. at 814.

The fact that a proceeding is only affected by state law cannot be the sole basis for determining its

---

[25] We note that the practice of raising permissive abstention, pursuant to 28 U.S.C. § 1334(c)(1), with notice to brief, has been upheld by other courts.  *See In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009); *Wallace v. Guretzky*, 2009 WL 3171767 (E.D.N.Y. Sept. 29, 2009) (upholding bankruptcy court who raised permissive abstention *sua sponte*).

core or non-core status.  28 U.S.C. § 157(b)(3).  The distinction between core and non-core cases affects the depth of the bankruptcy court's jurisdiction as well as the ability to abstain and remand. *Id*.  In this regard, while a bankruptcy court can hear and determine all core proceedings, only a district court, not a bankruptcy court, may enter final judgment in a non-core, "related to" proceeding.  *Compare* 28 U.S.C. § 157(b)(1) *with* § (c)(1).[26]  Similarly, the parameters of the test for determining abstention and remand differ depending on whether the case is core or non-core. If a claim is non-core, then mandatory abstention set forth in 28 U.S.C. § 1334(c)(2) would apply.[27] On the other hand, permissive abstention, pursuant to 28 U.S.C. § 1334(c)(1), applies to all

---

[26] 28 U.S.C. § 157(b)(1) states as follows:

Bankruptcy judges may hear and determine all cases under [T]itle 11 and all core proceedings arising under [T]itle 11, or arising in a case under [T]itle 11 . . . and may enter appropriate orders and judgments, subject to [appellate] review.

By contrast, 28 U.S.C. § 157(c)(1) states as follows:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under [T]itle 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

[27] Section 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In 2005, the Second Circuit affirmatively ruled and put to rest the oft-debated notion that mandatory abstention applies to removed cases.  *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005).  That debate centered around the statutory criteria in Section 1334(c)(2) that a state action must be "commenced."  Prior to the Second Circuit's definitive ruling in *Mt. McKinley*, courts grappled with whether this section could apply to removed cases since, once removed, the state case ceased to exist.  *See, e.g., In re Adelphia Commc'n Corp.*, 285 B.R. 127, 141-42 (Bankr. S.D.N.Y. 2002) (explaining the debate and citing cases in support of each stance before ruling that mandatory abstention does not apply to removed cases).

proceedings, core and non-core.[28]

Though it contends that the Court has bankruptcy jurisdiction by virtue of the case being "related to" a bankruptcy proceeding, OSJ also claims that the bankruptcy court has "core" jurisdiction over the claims asserted herein.  It seems counterintuitive that OSJ would have us believe that the claims before this Court could concomitantly constitute "related to" and core jurisdiction.  Nevertheless, OSJ insists that Whitney's state claims against OSJ constitute core proceedings under 28 U.S.C. §§ 157(b)(2)(B), (C), and (K).[29]  Putting our reservations aside for the moment, we need not evaluate OSJ's seemingly flawed and contradictory stance since it appears that

---

[28] Section 1334(c)(1) provides:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

[29] Pursuant to section 157, core proceedings include, but are not limited to –

(A) matters concerning the administration of the estate;
**(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;**
**(C) counterclaims by the estate against persons filing claims against the estate;**
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
**(K) determinations of the validity, extent, or priority of liens;**
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.
28 U.S.C. § 157(b)(2) (emphasis added).

*-28-*

mandatory abstention for non-core proceedings, set forth in section 1334(c)(2), may not be raised

by the Court *sua sponte*.[30]  *In re Craft Architechtural Metals Corp.*, 115 B.R. 423, 431 (E.D.N.Y.

1989) (noting, in a case with facts similar to ours, that "[t]he only reason why abstention was not

mandatory was that neither party had requested it").

Nevertheless, there still remains two other abstention provisions which the Court may turn:

(1) permissive abstention pursuant to 28 U.S.C. § 1334(c)(1), and (2) equitable remand pursuant to

28 U.S.C. § 1452(b).

Unlike mandatory abstention, a court may in its discretion, pursuant to 28 U.S.C. §

1334(c)(1), abstain from hearing any other matter which derives its jurisdiction from § 1334.  *See*

*In re S.G. Phillips Constrs., Inc.*, 45 F.3d 702, 708 (2d Cir. 1995) (holding that under § 1334(c)(1),

a court may abstain from hearing a "core" proceeding).  Also unlike mandatory abstention, there is

no time constraint on when the matter of permissive abstention can be raised.  *See In re JCC Capital*

*Corp.*, 147 B.R. 349, 354 (Bankr. S.D.N.Y. 1992) ("The timely motion requirement is not present

in 28 U.S.C. § 1334(c)((1), the discretionary abstention provision.").  While there is no exhaustive

---

[30] Pursuant to 28 U.S.C. § 1334(c)(2), a district court must abstain from hearing a non-core proceeding if six criteria are met:

> (1) the motion for abstention was timely; (2) the action is based on a state-law claim; (3) the action is "related to" a bankruptcy proceeding, as opposed to "arising under" the Bankruptcy code or "arising in" a bankruptcy proceeding; (4) section 1334 is the sole jurisdictional basis for the action; (5) an action was commenced in state court; and (6) the state-court action can be timely adjudicated.

*Deep v. Boies*, 2007 WL 169940, at *2 (N.D.N.Y. Jan. 17, 2007) (citations omitted) (cited in *In re Tougher Indus., Inc.*, 2009 WL 2872842 (Bankr. N.D.N.Y. Feb. 17, 2009)).

We believe all six criteria would be met here.  *In re Adelphia Commc'n Corp.*, 285 B.R. 127, 140-41 (Bankr. S.D.N.Y. 2002) (noting that a court <u>must</u> abstain only upon the showing of each of the above statutory requirements).  Just as in *In re Craft Architectural Metals Corp.*, a case which is often cited, we believe this proceeding is precisely the kind mandating abstention "had either party requested it."  115 B.R. 423, 431 (E.D.N.Y. 1989).  That court went on to note that the proceeding before it

> is a proceeding based upon a state law cause of action, related to a case under [T]itle 11 with respect to which an action could not have been commenced in a court of the United States absent bankruptcy jurisdiction, in which an action had been commenced and, presumably, could be timely adjudicated in a state forum of appropriate jurisdiction.  Furthermore, only questions of state law are involved.

*Id.*

list for analysis, courts often look to the following factors in assessing permissive abstention:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) the existence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of the asserted "core" proceeding; (8) the feasibility of severing state law claims or bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy judge's docket; (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceedings of nondebtor parties.

*In re Olympia & York Maiden Lane Co. LLC*, 1999 WL 58581, at *7 (Bankr. S.D.N.Y. Jan. 25, 1999); *see also In re Tougher Indust., Inc.*, 2009 WL 2872842, at * 4-5 (Bankr. N.D.N.Y. Feb. 17, 2009); *Deep v. Boies*, 2007 WL 169940, at *3 (N.D.N.Y. Jan. 17, 2007).

Similarly, in addition to setting forth the procedure for bankruptcy removal, section 1452 also provides that the "court to which such a claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). That section also does not dictate a time frame within which to raise equitable remand. In deciding whether to remand under this section, courts consider a number of factors including:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).

We direct that the parties brief the matters of permissive abstention and equitable remand to the District Judge so that a proper assessment of the above factors can be made. In hopes of aiding the District Court in this determination, we make the following observations from the limited information that has thus far been provided.

This case clearly involves matters of state law. No federal nor other bankruptcy issues are

presented in the Complaint.  It is a fairly straight forward case of fraudulent inducement and breach of contract.  While the nature of the state law is by no means difficult nor unique, the state court is already familiar with the underlying facts and has already adjudicated matters raised in the Complaint.[31]  Indeed, the state court is not only familiar with the underlying proceedings, but is concomitantly handling the related foreclosure and malpractice actions.  From what we can glean from the Bankruptcy filings, Whitney Lane acknowledges it owes money to OSJ as holder of the Note and Mortgage.  While the amount owed is in dispute in Bankruptcy, such does not appear to be the basis of any claim in this proceeding.  *See* Charlton Decl., Ex. D, Whitney Lane Plan of Reorganization, Article IV ("OSJ has a disputed secured claim of approximately $4,250,000 of which the Debtor does not dispute $3,4000,000 as being owed and allowed which, to the extent allowed, is secured by a first-priority perfected security interest in the Premises.").  Apparently the disputed amount is centered around late fees.  *Id*.  The Reorganization Plan sets forth alternate payment schedules for monies to be paid to OSJ, which adjusts for the inclusion of the disputed $850,000, depending on the outcome of the fraud litigation.  *Id*.  The underlying fraud allegations themselves do not appear to be a concern for the Bankruptcy court and it does not appear likely that evidence of that nature will need to be considered.  Of course, the parties may comment on these observations to the District Court if in their estimation this is an incorrect assessment of the state of affairs.  Also, the other Defendants in this action are not creditors in the Bankruptcy action and have no ties to the Eastern District.  In fact, nothing in this litigation, except for Whitney Lane, has any connection with the Eastern District.  All of the negotiations surrounding the contract at issue were conducted in Saratoga County.  The subject property and all the paperwork in connection therewith

---

[31] In his April 9th Order, Judge Ferradino denied the Don Realty Defendants' motion for summary judgment. Dkt. No. 1, Ex. B.

remains in Saratoga County.  All relevant witnesses reside and/or work in Saratoga County.

Our preliminary assessment is that permissive abstention and/or equitable remand is proper.

For all of these reasons stated herein, we recommend that the District Court receive further briefing

from the parties on the issues outlined above.  Should the Court opt to remand/abstain, the Motion

to Change Venue, Dkt. No. 12, should be **denied as moot.**  In an abundance of caution, we address

OSJ's Motion to Change Venue below, should the District Court feel such an analysis is warranted.

### C.  Motion to Change Venue

OSJ has filed a Motion to Change Venue pursuant to 28 U.S.C. § 1412, which states: "A

district court may transfer a case or proceeding under [T]itle 11 to a district court for another district,

in the interest of justice or for the convenience of the parties."  Dkt. No. 8, OSJ Mot. to Change

Venue.  By this Motion, OSJ contends the Eastern District of New York is the more appropriate and

convenient forum for this fraud litigation.  It is OSJ's estimation that once venue is changed, the

fraud litigation would be joined with the pending Bankruptcy proceeding.

It appears both parties agree that § 1412 is the proper provision.[32]  Dkt. No. 12, Don Realty

Defs.' Mem. of Law in Opp'n to OSJ's Mot., at p. 4.  Nevertheless, the same factors are considered

by district courts in determining whether to grant a motion for transfer under § 1404(a) or § 1412:

1) the plaintiff's choice of forum; 2) the locus of the operative facts; 3) the location, convenience

and relative means of the parties; 4) the convenience of witnesses; 5) the availability of process to

---

[32] If the instant proceeding was considered "non-core" then the Motion to Change Venue would be decided pursuant to 28 U.S.C. § 1404.  While the overriding factors for determining a change in venue are the same as those considered in a § 1404 motion, certain analyses within each factor can change depending on whether the claim is core or non-core.  Because the parties agree that § 1412 is the guiding venue statute, we presume for this analysis only, despite our clear reservations as outlined above, that there is an accord that the instant proceeding constitutes a core proceeding.  Despite this apparent accord, we would be remiss if we did not again point out the inconsistent stances OSJ has conjured by declaring the propriety of its removal based upon "related to" jurisdiction while concomitantly pursuing a venue change based upon the core status of this litigation.

*-32-*

compel the attendance of witnesses; 6) the location of physical evidence; 7) the relative familiarity of the court with the applicable law; and 8) the interests of justice, including trial efficiency. *Official Comm. of Asbestos Claimants of G-I Holding, Inc., v. Heyman*, 306 B.R. 746, 749-50 (S.D.N.Y. 2004). "The party moving for a change in venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390-91 (2d Cir. 1990) (citations omitted). Whether a case will be transferred is within the discretion of the court and should be judged on a "case-by-case consideration of convenience and fairness." *Id*. at 1391 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

We consider each of the factors *seriatim*.

### 1. Plaintiff's Choice of Forum

Defendant OSJ correctly contends that the district where the Bankruptcy case is pending is presumed to be the "appropriate district for hearing and determination of a proceeding in bankruptcy." *In re Manville Forest Prods. Corp.*, 896 F.2d at 1391. However, as pointed out in *Official Comm. of Asbestos Claimants of G-I Holding*, a case cited by both parties, this presumption is "at odds with the strong presumption in favor of the plaintiff's choice of forum." 306 B.R. at 750 (citing cases). In countering this point, Defendant OSJ asserts, without citing to any authority in support, that the removal divested Plaintiff of its choice of forum, and so, that factor should not be weighed against transferring the case. Dkt. No. 8-2, OSJ Mem. of Law at pp. 5-6.

It appears in our case that the Plaintiff had little choice in deciding which forum to litigate its state claims. According to the Don Realty Defendants, the parties are contractually bound to litigate this case in the Northern District in conformity with the Promissory Note, executed by Plaintiff, which contained a forum selection clause. Dkt. No. 12 at p. 5; *see supra* Part II.A.2; *contra*

OSJ Mem. of Law at pp. 5-6 (incredulously stating that "Whitney chose to litigate this dispute in New York State Supreme Court for Saratoga County").  Thus, we are faced with competing policies. On the one hand, there is a strong policy favoring enforcement of a forum selection clause; however, "this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core."  *In re Iridium Operating LLC*, 285 B.R. 822, 837 (S.D.N.Y. 2002).  Buttressed against this policy is the "strong public policy interest in centralizing all core matters in the bankruptcy court."  *Id*. (quoting *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 252 (N.D.N.Y. 2001)).  It appears that these competing presumptions effectively cancel each other out.  Thus, this factor does not weigh in favor or against transfer.

### 2.  Locus of Operative Facts

It is undisputed that the actions giving rise to the allegations in the Plaintiff's Complaint all took place in the Northern District of New York.  The subject matter property is located in the Northern District.  The Town Taking matter underlying the Plaintiff's fraud allegations was initiated and prosecuted by the Town of Clifton Park, located in the Northern District.  And, the allegedly fraudulently induced purchase and financing documents were negotiated, prepared, recorded, and stored in the Northern District.  This factor then weighs heavily against transfer.

### 3.  Convenience and Relative Means of the Parties

OSJ claims that transfer of this matter would serve the interests of all parties since it would be litigated in one forum.  The Don Realty Defendants, however, are not parties to the Bankruptcy proceeding and, but for a transfer, have no cause to litigate in the Eastern District.  And, because all of the Don Realty Defendants are located in the Northern District, with OSJ being the only Defendant not located in the Northern District, this factor weighs slightly in favor of non-transfer.

### 4.  Convenience of the Witnesses

Virtually all non-party witnesses, totaling between forty and fifty, are located in the Northern

District.  A transfer in venue to the Eastern District would require these individuals to travel over

150 miles.  Among the witnesses to be called by the Don Realty Defendants are:

> (I) representatives from the Town of Clifton Park and Saratoga County with
> knowledge of the planning, publication and prosecution of the Town Taking Matter;
> (ii) certain surveyors, engineers, contractors, construction workers, appraisers,
> attorneys and other personnel engaged by the Town of Clifton Park in connection
> with the Town Taking Matter; (iii) certain representatives of the commercial tenants
> who leased space from the Plaintiff at the Property before, during and after the
> construction associated with the Town Taking Matter, including but not limited to,
> Dunkin Donuts, Northway Fellowship Church, Dollar General, Pioneer Savings
> Bank and Gold's Gym; (iv) former employees of Zerteck, Inc., a former tenant at the
> Property that is implicated in the Plaintiff's fraud allegations; (v) the realtors and
> leasing agents with knowledge of the actual and prospective commercial tenants for
> the Property before, during and after the construction associated with the Town
> Taking Matter; (vi) the Plaintiff's title insurance agency representative, Edward
> Salvo, Jr., Esq., who has first-hand knowledge of the events giving rise to the
> Plaintiff's fraud allegations; and (vii) the custodians of records at the Clifton Park
> Town Hall and Saratoga County Clerk's Office.

Dkt. No. 12 at pp. 6-7.

OSJ, on the other hand, has not pointed to a single witness that would benefit from changing the

venue of this action to the Eastern District.  This factor weighs against transfer.

### 5.  Availability of Process

OSJ does not comment on this factor.  On the other hand, the Don Realty Defendants point

out that non-party witnesses may be unwilling or unable to be deposed or appear at trial in the

Eastern District as costs could be very high.  This factor then weighs in favor of non-transfer.

### 6.  Location of Physical Evidence

OSJ does not comment on this factor, but it is clear that this factor weighs heavily against

transfer since all of the physical evidence, such as the subject property and transaction documents,

are all located in the Northern District.  This weighs strongly against changing venue.

### 7.  Familiarity with Applicable Law

This does not seem to be a significant factor in the litigation.

### 8.  Interests of Justice and Trial Efficiency

OSJ espouses that transfer of this matter would serve the interests of judicial efficiency and justice by ensuring the claims are litigated in one forum.  The Don Realty Defendants, however, assert that for all of the foregoing reasons, maintaining this action in the Northern District would ensure judicial and trial efficiency.

When weighing all of the above factors, it appears that transfer of this matter to another venue is not warranted.  Accordingly, to the extent this Motion is considered by the District Court, it should be **denied**.[33]

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that OSJ's request to supplement the record with a copy of its Answer (Dkt. No. 15) is **granted** and this Court has utilized this Exhibit as part of its analysis; and it is further

**ORDERED**, that the parties provide further briefing to the District Judge, as outlined in detail above; and it is further

**RECOMMENDED**, after full briefing, the District Court should exercise its power to abstain from hearing this matter and remand it to the state court and the Motion to Change Venue (Dkt. No. 8) should be **denied as moot**; and it is further

---

[33] We acknowledge that a change in venue is generally non-dispositive and thus within our realm of jurisdiction. Given the full analysis in this opinion, most pointedly our recommendation regarding further briefing on abstention and remand, we render our decision on the Motion to Change Venue as a recommendation so that the District Court has the full panoply of options at its disposal.

**RECOMMENDED,** that in the event the District Court does not exercise its power to abstain and remand, the Motion to Change Venue (Dkt. No. 8), should be **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   October 27, 2009
      Albany, New York

           RANDOLPH F. TREECE
           United States Magistrate Judge